UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RODNEY A. TEDERMAN,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>    Defendant. | No. 2:14-CV-00132-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 12, 15. Attorney Jeffrey Schwab represents Rodney A. Tederman (Plaintiff); Special Assistant United States Attorney Jeffrey McClain represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 18.

After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on July 29, 2010, alleging disability since June 1, 2009, due to major depressive disorder, panic disorder with agoraphobia, difficulty breathing, and knee injuries. Tr. 285, 288. The applications were

denied initially and upon reconsideration.  Tr. 169-176, 179-190.  Administrative Law Judge (ALJ) Palachuk held a hearing on November 7, 2012, Tr. 46-112, at which Plaintiff, represented by counsel, vocational expert (VE) Daniel McKinney, medical expert (ME) Anthony Francis, M.D., and ME Marian Martin, Ph.D., testified.  The ALJ issued an unfavorable decision on November 29, 2012.  Tr. 19-33.  The Appeals Council denied review on March 12, 2014.  Tr. 1-6.  The ALJ's November 29, 2012, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on May 7, 2014.  ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 39 years old at the alleged onset date, June 1, 2009.  Tr. 264.  Plaintiff completed the ninth grade and has not received his GED.  Tr. 87, 289.  He has worked as a rotary driller and stock controller.  Tr. 305-307.  Plaintiff reported he stopped working in January of 2009 due to both his conditions and the lack of work, but that his conditions alone became severe enough to keep him from working as of June 1, 2009.  Tr. 289.  At the administrative hearing, Plaintiff described depression, audio and visual hallucinations, anxiety around other people, difficulty breathing, and bilateral knee pain, Tr. 94, 91, 97, 100, 103.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On November 26, 2012, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since June 1, 2009, the alleged onset date of disability. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis of the left knee; history of patellar dislocations with multiple surgeries of the left knee; history of left lower lobe lung resections; subjective weakness of the left shoulder; schizoaffective disorder; bipolar disorder vs. substance induced mood disorder; personality disorder not otherwise specified; and polysubstance abuse (cocaine, alcohol, and marijuana). Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a range of sedentary work with the following restrictions:

> The claimant can occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, sit for approximately six hours in an eight-hour workday and walk or stand no more than two hours in an eight-hour workday. The claimant requires the freedom to alternate sitting and standing every 60 minutes. He is capable of occasionally crawling, crouching, kneeling, stooping, balancing and climbing ramps or stairs, but he is unable to climb ladders, ropes or scaffolds. The claimant should avoid concentrate[d] exposure to extreme temperatures, humidity and respiratory irritants and all exposure to hazards. He is able to understand, remember and carry out simple, routine, repetitive tasks and instructions. He is able to maintain attention and concentration for 2-hour intervals between regularly scheduled breaks. The claimant is unable to make work-related decisions or judgments.

> He is unable to engage in production rate for pace of work. He is able to tolerate only minimal (defined as less than 25% of the day) interaction with the public, coworkers and supervisors. He requires additional time (defined as 10% more than the average employee) to adapt to changes in the work setting or work routine.

Tr. 26-27. The ALJ concluded that Plaintiff was not able to perform his past relevant work. Tr. 31.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the VE, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the occupations of production inspectors/checkers, packing and filling machine operators, and hand packers and packagers. Tr. 32. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from June 1, 2009, through the date of the ALJ's decision, November 29, 2012. Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical opinions of Terilee Wingate, Ph.D., Marion Martin, Ph.D., and Christmas Covell, Ph.D.; (2) failing to properly consider Plaintiff's statements about the severity of his symptoms, (3) failing to form a RFC determination that accounted for all of his limitations; and (4) failing to fully develop the record.

## DISCUSSION

**A.    Evaluation of Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions regarding Plaintiff's mental health impairments, specifically addressing the opinions of Dr. Wingate, Dr. Martin, and Dr. Covell. ECF No. 12 at 4-6.

In weighing medical source opinions, the ALJ should distinguish between

three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and; (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the treating physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id.* at 830-831.

1.   **Dr. Wingate**

Defendant asserts that Plaintiff failed to contest the weight the ALJ gave to Dr. Wingate's opinion. ECF No. 15 at 11. However, Plaintiff characterized the issue as "whether the mental RFC opined by Dr. Martin withstands scrutiny; and whether, in combination with his physical, educational, and skills limitations he can return to SGA level work activity." ECF No. 12 at 4. In attacking the weight given to Dr. Martin's opinion, Plaintiff asserts that Dr. Wingate's opinion should have controlled. Tr. 12 at 4-5. While the Court agrees the issue could have been raised with more clarity, Plaintiff's Motion contains sufficient assertions for the

Court to review the weight the ALJ provided Dr. Wingate's opinion.

Dr. Wingate examined Plaintiff twice for DSHS, on January 7, 2010, and August 2, 2010. In the January 7, 2010, evaluation, Dr. Wingate concluded that Plaintiff had moderate limitations in his abilities to exercise judgement and make decisions; to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressures and expectations of a normal work setting; and to maintain appropriate behavior in a work setting. Tr. 418. Dr. Wingate went on to state that she expected the recommended mental health intervention, i.e., medication management, to restore Plaintiff's ability to work for pay in a regular and predictable manner because he had responded well to treatment in the past. Tr. 419. She expected the functional limitations set forth above to last from six months to one year. *Id*.

In the August 2, 2010, evaluation, Dr. Wingate opined that Plaintiff would have marked limitations in his abilities to relate appropriately to co-workers and supervisors; to interact appropriately in public contacts; to respond appropriately to and tolerate the pressures and expectations of a normal work setting; and to maintain appropriate behavior in a work setting. Tr. 428. Additionally, Dr. Wingate gave Plaintiff a moderate limitation in the abilities to understand, remember, and follow complex (more than two step) instructions; to perform routine tasks; and to care for self, including personal hygiene and appearance. *Id*. Dr. Wingate concluded that mental health intervention would not restore Plaintiff's ability to work for pay in a regular and predictable manner. Tr. 429. She further concluded that Plaintiff's prognosis was guarded, noting that his anxiety and psychotic symptoms had continued even with mental health treatment. Tr. 429.

In the August 2, 2010 examination report, Dr. Wingate noted that Plaintiff was taking psychiatric medication prescribed by Dr. Jennings, including Tegretol, Seroquel, and Zoloft. Tr. 424. Dr. Jennings' records showed that Plaintiff was

filling his prescriptions.  Tr. 474.

The ALJ gave the opinion of Dr. Wingate "some weight to the extent it is consistent with Dr. Martin's opinion," noting that Dr. Wingate's opinion was based on claimant's condition without proper medication.  Tr. 31.

The record does not contain the opinion of a treating psychologist and Dr. Wingate is an examining psychologist.  Therefore, the ALJ is required to provide clear and convincing reasons for rejecting Dr. Wingate's opinion if it is uncontradicted and specific and legitimate reasons for rejecting her opinion if it is contradicted.  The sole reason the ALJ provided for not giving Dr. Wingate's opinion controlling weight, that it was based on claimant's condition without proper medication, is not supported by the record.

The first time Dr. Wingate examined Plaintiff, he was not receiving mental health treatment, including medication.  Tr. 419.  Therefore, for the January 7, 2010, evaluation, the ALJ's statement that the opinion was based on Plaintiff's condition without proper medication is supported by the record.  But, after seven months of treatment, Dr. Wingate reexamined Plaintiff and opined that his limitations had worsened and continued treatment would likely not result in recovery.  Tr. 429.  Therefore, the ALJ's reason for rejecting Dr. Wingate's August 2, 2010, opinion, that it is based on Plaintiff's condition without proper medication, is not supported by substantial evidence.  As such, it can neither be clear and convincing nor specific and legitimate.

Accordingly, the Court finds the ALJ failed to properly consider the weight given to Dr. Wingate's opinion.  Therefore, this matter must be remanded for additional proceedings for the ALJ to properly assess Dr. Wingate's August 2, 2010, opinion.

### 2. Dr. Martin

Dr. Martin testified at the November 7, 2012, hearing that she had never treated or examined Plaintiff and had reviewed the medical records through Exhibit

13F. Tr. 62-63. This makes Dr. Martin a nonexamining psychologist.

The ALJ gave Dr. Martin's opinion "significant weight because it is from an acceptable medical source who was able to evaluate all of the evidence." Tr. 29.

As discussed below, the record is ambiguous regarding the existence of additional records pertaining to the relevant time period. Therefore, upon remand, the ALJ will reconsider the weight given to Dr. Martin's opinion in light of a fully developed record.

### 3. Dr. Covell

Dr. Covell completed a consultative examination on December 13, 2010. Tr. 482-491. Dr. Covell opined that Plaintiff was potentially a malingerer with no limitations in the ability to understand, recall, or follow through on simple or complex instructions. Tr. 489. Dr. Covell did conclude that Plaintiff had occasional limitations in concentration, pace and/or persistence, noting he can work adequately with the supervisors and at least a few co-workers, but may have difficulty in positions demanding routine, significant interactions with the public. *Id.*

The ALJ found Plaintiff more limited than did Dr. Covell, concluding that Dr. Covell's opinion regarding the Plaintiff's ability to work in a production pace environment and function socially "is consistent with the evidence." Tr. 30. However, the ALJ accorded Dr. Covell's opinion regarding Plaintiff's ability to understand, remember, and carry out complex instructions "little weight" because "the record documents the claimant's difficulties with concentration and completing tasks." *Id.*

Considering the case is to be remanded, the ALJ will reevaluate Dr. Covell's opinion in light of the other medical opinions and a fully developed record.

### B. Credibility

Plaintiff argues that his testimony should be given "substantial weight" inferring that the ALJ erred in his credibility determination. ECF No. 12 at 6.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

The ALJ found the Plaintiff's statements as to "intensity, persistence and limiting effects of [his] symptoms" to be "not credible to the extent they are inconsistent" with the RFC. Tr. 27. The ALJ gave two reasons for why he found Plaintiff to be less than fully credible: (1) because "his psychiatric testing had scores suggesting malingering mental illness"; and (2) he provided inconsistent statements about his substance use and other conditions. Tr. 28.

**1.    Malingering**

The ALJ concluded that Plaintiff's score on the Miller Forensic Assessment of Symptoms Test (M-FAST) along with his history of atypical hallucinations support the finding that he is malingering. Tr. 28. In December of 2010, Plaintiff completed the M-FAST with a score of nine, which Dr. Covell notes is "significantly elevated, indicating that he may be malingering mental illness." Tr. 489.

The ALJ's finding of malingering is sufficient to support an adverse credibility determination under Ninth Circuit jurisprudence. *See Benton v. Barnhart,* 331 F.3d 1030, 1040 (9th Cir. 2003); *see also, e.g., LaGrand v. Commissioner Social Sec. Admin.* 379 F. App'x 555, 556 (9th Cir. 2010) (now citable for its persuasive value per Ninth Circuit Rule 36–3) (citing *Benton* for the proposition that "[t]he ALJ was entitled to reject LaGrand's testimony because there was evidence of malingering"); *Flores v. Commissioner of Social Security,* 237 F. App'x 251, 252-253 (9th Cir. 2007) (citing *Benson* for the proposition that "an ALJ may reject a claimant's subjective pain testimony if the record contains

affirmative evidence of malingering"); *Lira v. Astrue,* 2011 WL 1743308, at *2 (C.D. Cal. 2011) ("A finding of malingering is sufficient to support an adverse credibility determination."); *Robinson v. Michael Astrue,* 2011 WL 1261187, at *11 (D. Or. 2011) ("Evidence of malingering, however, by itself, is enough to discredit a claimant.").

  Here, the ALJ cites to Dr. Covell's conclusion that Plaintiff may be a malingerer and Plaintiff's atypical hallucinations at Exhibit 8F at 16-17 as affirmative evidence of malingering.  Tr. 28.  Dr. Covell's report does suggest that Plaintiff is malingering, but falls short of an actual positive diagnosis, stating that an additional assessment "appears warranted to rule in/out diagnosis of malingering."  Tr. 489.  Furthermore, the records cited as Exhibit 8F at 16-17 do not support the ALJ's conclusion that Plaintiff experienced atypical hallucinations.  Instead, the records speak of "atypical antipsychotic and psychotherapy" as treatment for Plaintiff's mental health impairments.  Tr. 513-514.  But, a review of the record as a whole does indicate some inconsistent statements by Plaintiff regarding his visual and audio hallucinations, which can be considered feigning: In January of 2010, Plaintiff tells Dr. Wingate that he experiences audio hallucinations in the form of voices that tell him to harm himself and visual hallucinations in the form of a "male figure in a flash," Tr. 415; in March of 2010, Plaintiff tells Sarah Dailey he experiences audio hallucinations in the form of voices telling him to hurt himself and visual hallucinations in the form of a "shadow guy,"  Tr. 435; in August of 2010, he tells Dr. Wingate that he experiences auditory hallucinations in the form of voices that tell him to harm himself or hurt others and visual hallucinations in the form of "words that he is thinking, but the man that he used to see rarely 'comes around,'" Tr. 425; in December of 2010, Plaintiff tells Dr. Colvin that he experiences audio hallucinations in the form of a voice in his head that tells him to kill people and the visual hallucinations are in the form of a black shadow creature "that has been

haunting me forever," Tr. 485-486; in January of 2012, Plaintiff tells Jennifer Morrison, M.S., that he began experiencing audio hallucinations in 2007 as a screaming women before he fell asleep and that he experiences visual hallucinations in the form of a little girl, Tr. 568-569; and at the November 7, 2012, hearing Plaintiff testified that his visual hallucinations were that of a little girl. Tr. 103.

Although the ALJ's conclusion that the file contains affirmative evidence of malingering is not supported by an affirmative diagnosis and her assertion that Plaintiff experiences atypical hallucinations, is not an accurate reflection of the record, the record may contain substantial evidence to find Plaintiff malingering. Accordingly, this issue shall be considered on remand. The ALJ is to review the record as a whole and determine if substantial evidence supports a finding of malingering.

### 2. Inconsistent statements

In addition to malingering, the ALJ found that Plaintiff had provided inconsistent statements about his substance use, his right knee pain, and why he presented for treatment. Tr. 28. Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281. General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

First, the ALJ noted that Plaintiff was inconsistent in his reported substance use history. An ALJ may properly consider evidence of a claimant's substance use in assessing credibility. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)

(ALJ's finding that claimant was not a reliable historian regarding drug and alcohol usage supports negative credibility determination); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (conflicting or inconsistent testimony concerning alcohol or drug use can contribute to an adverse credibility finding).

To support the determination that Plaintiff provided inconsistent statements regarding his substance use, the ALJ cited the following reports:  On June 11, 2009, Plaintiff reported that he quit drinking six to seven months prior and he used to do cocaine, Tr. 391; on January 7, 2010, Plaintiff reported he stopped drinking in 2008 and he last used cannabis and cocaine on January 17, 2009, Tr. 420; on December 23, 2010, Plaintiff reported that he drank daily until about three years ago and admitted he was currently drinking, his last use of cocaine was January of 2009, he used marijuana daily until the age of 30 (there is no mention of a date of last use), he last used acid in 1992 or 1993, he last used mushrooms at about age 19, he last used methamphetamines at about age 30, and he last used LSD at age 18, Tr. 486; on November 15, 2011, Plaintiff reported he was currently drinking and he had a history of using cocaine, methamphetamine, and crack, but had stopped taking drugs on January 9, 2009, Tr. 619; and on February 6, 2012, Plaintiff stated he was currently drinking and using marijuana.  Tr. 562.

The above citations to the record are actually not inconsistent.  Plaintiff consistently states he stopped drinking in 2008 and then he started drinking again later on.  Plaintiff stopped smoking marijuana in 2009, but started smoking again.  Plaintiff consistently reported no use of other substances after January of 2009.

The ALJ's determination is not supported by substantial evidence.  Therefore, this is not a clear and convincing reason to reject Plaintiff's credibility.

Second, the ALJ concluded that despite allegations of knee pain, Plaintiff reported his right knee was "great" with no issues in June of 2011.  Tr. 28.  A review of the record as a whole reveals that Plaintiff made several statements regarding pain in his right knee prior to June 23, 2011.  Tr. 319, 477, 522.  Plaintiff

had surgery on the right knee on May 11, 2011. Tr. 669. At a post-op follow up on May 24, 2011, Plaintiff stated that he was experiencing some aching in the front of the knee. *Id*. At the post-op follow up on June 23, 2011, he reported that his right knee was "great" and had no issues. Tr. 674. At the November 7, 2012, hearing, Plaintiff testified that he experienced pain in both his knees. Tr. 97.

Here, it is unclear if the ALJ is finding that the June 2011 statement is inconsistent with all the reports of knee pain throughout the record or just the testimony at the hearing that the knee pain continued despite the success of the surgery. *See Reddick*, 157 F.3d at 722 (general findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints). Therefore, this is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

Finally, the ALJ noted that Plaintiff "reported to his behavioral health assessor in January 21012 (*sic*) that 'the state is asking [him] to be here.'" Tr. 28. It is unclear why the ALJ concluded this supported an adverse credibility finding. Again, the ALJ failed to identify what testimony was undermined by this report as required by *Reddick*. Therefore, this too is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

In conclusion, the ALJ failed to set forth a specific, clear and convincing reason for finding the Plaintiff less than fully credible. Therefore, the ALJ shall reassess credibility on remand.

**C.  RFC**

Plaintiff makes two arguments pertaining to the ALJ's formation of the RFC: (1) based on the testimony of Dr. Francis at the hearing, the RFC should be limited to sedentary work; and (2) the ALJ failed to include the limitations from Dr. Wingate's opinion in the RFC. ECF No. 12 at 7-8.

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P,

Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). In formulating a RFC, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities. *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).

As to Plaintiff's first assertion, that his RFC should be limited to sedentary work, there is no error. The ALJ found Plaintiff was limited to a less than full range of sedentary work. Tr. 26. Therefore, Plaintiff's argument is moot.

As to Plaintiff's second assertion, that the ALJ failed to include the limitations opined by Dr. Wingate, the ALJ is instructed to readdress the RFC on remand in light of the weight given to the medical opinions in the record and a new credibility determination.

**D.     Development of the Record**

Plaintiff asserts there was medical evidence missing from the record. ECF No. 12 at 7-8.

The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Despite this duty to develop the record, it remains the claimant's burden to prove that he is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a). "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). "In cases of mental impairments, this duty is especially important." *DeLorme v. Sullivan,* 924 F.2d 841, 849 (9th Cir.1990); *see also* 20 C.F.R. § 404.944 (stating that the ALJ may continue the hearing if she believes material evidence is missing, and may reopen

the hearing at any time prior to mailing a notice of decision to receive new and material evidence); 20 C.F.R. § 416.1450(d) (providing that the ALJ may issue subpoenas on her own initiative or at the request of a party).

At the hearing, Dr. Martin questioned Plaintiff about the absence of records from hospitalizations following his 2008 and 2009 suicide attempts and missing counseling records. Tr. 67-69. Dr. Martin testified that "it would be helpful to have those records. . . . But we can go ahead here." Tr. 69.

Defendant asserts that all the missing records are from outside the relevant time period and are, therefore, outside the ALJ's duty to review. ECF 15 at 4. The Plaintiff testified to missing records pertaining to the relevant time period, since June 1, 2009, discussing a hospitalization and counseling records in 2009 that are absent from the record. Tr. 67-68.

Considering the case is remanded to the ALJ for further proceedings, the ALJ is instructed to procure the necessary, relevant treatment notes.

## REMEDY

Plaintiff argues that the ALJ's decision should be reversed and remanded for an immediate award of benefits. EFC No. 12 at 8. The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Smolen*, 80 F.3d at 1292. Remand for additional proceedings is appropriate when additional proceedings could remedy defects. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir.1989). In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if the record was fully developed and all the evidence were properly evaluated. Further proceedings are necessary for a proper determination to be made.

On remand, the ALJ shall determine Plaintiff's credibility regarding his

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

symptom reporting, and reassess Plaintiff's RFC, taking into considering the opinions of Dr. Wingate and all other medical evidence of record relevant to Plaintiff's claim for disability benefits. The ALJ shall develop the record further by gathering all outstanding relevant treatment records and, if warranted, by eliciting medical expert testimony to assist the ALJ in formulating a new RFC determination. The ALJ shall obtain testimony from a vocational expert and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED November 27, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE